AGINS, SIEGEL, REINER & BOUKLAS, LLP
*Attorneys for* Subpoenaed Non-Party Witness
   Lucky Mott Realty LLC
BY: CARL D. BERNSTEIN, ESQ. (CB8002)
    CHARLES M. NEWMAN, ESQ. (CN9370)
386 PARK AVENUE SOUTH, SUITE 1200
NEW YORK, NEW YORK 10016
(212) 447-5599

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Filed Electronically

---

MIN YU XIAO,

                Plaintiff,

      – against –

LUCKY CHATHAM REALTY CORP. and
RICHARD T. WONG,

                Defendants.

No. 07 Civ 9430 (RWS)

**AFFIDAVIT IN SUPPORT OF MOTION BY NON-PARTY DEPOSITION WITNESS, LUCKY MOTT REALTY LLC, TO QUASH and/or FOR A PROTECTIVE ORDER**

---

STATE OF NEW YORK   )
                              ) ss:
COUNTY OF NEW YORK  )

      RICHARD WONG, being duly sworn, deposes and says:

**INTRODUCTION AND PREFACE**

      1. My wife and I are the sole owners and managers of Lucky Mott Realty LLC ("LMRealty"). Our company, which is not a party to this action, has received a subpoena *duces tecum* and notice of deposition to give pre-trial discovery and disclosure demanded by the plaintiff in this action. I am fully familiar with the facts set forth herein, and make this affidavit in support of LMRealty's motion to quash the subpoena and vacate the deposition notice, or for a

protective order in the event the subpoena is not quashed. Copies of the subpoena and notice, each dated March 20, 2008, are annexed hereto collectively as **Exhibit 1**. (The deposition date was adjourned on consent of counsel to June 4, 2008.) A copy of the complaint in the action, which alleges labor law violations, is annexed for the Court's ready reference as **Exhibit 2**.

2. I wish to make one prefatory note about the information LMRealty will provide in this affidavit. The company takes the confidentiality and privacy of its financial and other proprietary information seriously as a matter of principle. I volunteer certain information here simply to show that the plaintiff is not entitled to depose LMRealty; or if he is, that the questioning and exhibit requests must be strictly limited. Plaintiff's counsel has been good enough to explain the reasons they want to depose my company. Although I do not think the reasons are valid, I am willing for the Court to have enough information to see that even if the plaintiff's legal arguments are correct, they in fact do not help the plaintiff's case or justify deposing my company. LMRealty reserves all privacy and confidentiality rights, including as to the extensions of information provided here.

## BACKGROUND FACTS

3. LMRealty, the proposed non-party witness, has no connection whatsoever with the plaintiff. (We understand that the plaintiff has not alleged that LMRealty has any liability to him in any way.) LMRealty has never employed the plaintiff. Indeed, LMRealty does not operate any business at 61 St. James Place, the alleged place of employment, and has never done so.

LMRealty does not and did not at any relevant time have any employees, except that my wife and I work as co-owners. LMRealty, the proposed witness, has never asked for, nor received, the benefit of any work, labor or services of the plaintiff.

4. The proposed witness has exactly one connection to anything bearing on this lawsuit. It is the owner of the real property located at 61 and 63 St. James Place, New York, New York. That is the location at which the plaintiff alleges he was employed. LMRealty entered into a lease for the entire premises above the ground floor with defendant Lucky Chatham Realty Corp. The most recent lease agreement is dated as of April 1, 2006 and is for the period April 1, 2006 through March 31, 2008; the leasehold was extended to March 31, 2010 by an extension agreement dated as of April 1, 2008. The lease and extension agreement (collectively, the "Lease") are annexed hereto as **Exhibit 3**.

5. Richard T. Wong, the individual defendant and an owner of defendant Lucky Chatham Realty Corp., is my son. However, neither my wife nor I have any ownership or control interest whatsoever in defendant Lucky Chatham Realty Corp. Defendant Richard T. Wong has no ownership or control interest whatsoever in proposed witness LMRealty.

**THE SUBPOENA SHOULD BE QUASHED
AND THE DEPOSITION NOTICE VACATED**

6. LMRealty's counsel inquired of plaintiff's counsel as to why plaintiff had subpoenaed the corporate defendant's landlord for a deposition. The Court is respectfully referred to the

accompanying memorandum of law for a fuller explanation of what we have learned about the plaintiff's position. Suffice it to say here that the plaintiff apparently wishes to obtain federal jurisdiction in this action, and Fair Labor Standards Act remedies, by arguing that the defendant is reachable under the Fair Labor Standards Act as a company in interstate commerce if a web of independent companies that happen to be owned by members of the individual defendant's family, aggregated together for the plaintiff's arithmetic only, have annual gross revenues of at least $500,000.

7. To avoid the burden and nuisance of preparing for, traveling to and participating at a deposition, I provide the following revenue information about the proposed witness, LMRealty.

8. As can be seen from the Lease (Exh. 3, page 1), the annual rent is $42,000 per year, payable by defendant Lucky Chatham Realty Corp. to proposed witness LMRealty. That $42,000 in annual rent is the *sole* revenue that proposed witness LMRealty has ever received from defendant Lucky Chatham Realty Corp., and LMRealty has no right to any other income from that defendant. The proposed witness receives no revenue of any kind from the individual defendant, Richard T. Wong, and has no right to do so. The non-party witness's financial information is relevant to this case only if the plaintiff's aggregation theory is valid. Even if it is valid, it seems only logical that it be incumbent on the plaintiff to show — from information already in his possession or which he has already obtained in discovery — that deposing the proposed witness will, or is likely to, elicit otherwise unavailable information supporting plaintiff's argument that he can fall within the protection of the Fair Labor Standards Act and the jurisdiction of this

Court. Otherwise, a deposition of LMRealty is no more relevant to the action than would be a deposition of General Motors.

9. There should be no deposition at all unless the plaintiff survives a first legal test: he must show that his legal theory is correct, and that there could be facts supporting his claim that LMRealty's gross revenue may be added to the defendant's in order to determine jurisdiction. *If* the plaintiff passes that test in opposing this motion, then he is confronted with the next test, a factual one. Respectfully, there should be no basis on which to force a non-party to subject itself to a deposition about its finances (or anything else) unless (a) the plaintiff has good reason to believe that the proposed witness's revenue figures are relevant and material to the plaintiff's jurisdictional hurdles; and (b) the plaintiff can demonstrate that relevance and materiality to the satisfaction of the Court prior to any deposition.

10. If I understand, through counsel, the plaintiff's position, the argument is that even though there is no cross- or common-ownership and even though there is no cross- or common-control between any defendant and the proposed witness, a family connection or some other relationship between discrete companies should be used to impute a nexus that justifies aggregating annual gross revenues of as many companies as necessary until the plaintiff's addition reaches to the statutory $500,000 minimum — a minimum that he apparently cannot otherwise show. I do not accept the plaintiff's theory, and it is discussed in greater detail in LMRealty's accompanying memorandum of law. However, for purposes of showing that a deposition of LMRealty will offer the plaintiff no assistance, I address certain additional facts relevant to the theory, assuming,

only for the sake of argument, that the plaintiff's theory has any validity. I do so while cautioning that I do not believe the facts are relevant and that LMRealty does not waive privacy or confidentiality rights.

11. I have readily available financial information about LMRealty for the last two calendar years. Annual gross revenues were just under $271,000 in 2006 and just under $293,000 in 2007. *Even if* the plaintiff's theory is correct — *i.e.*, that the unrelated witness's gross revenues from all sources should be added to the defendant's gross revenues to determine whether a jurisdictional minimum has been met — the plaintiff would have to show that the defendant has annual gross revenue exceeding $200,000 a year. It is respectfully suggested that in order to justify requiring a non-party to submit to a deposition, the plaintiff should first demonstrate two things to the satisfaction of this Court. One, he must show that his legal theory is correct, and he is thus entitled to count an unrelated company's revenues from all sources, in order to reach his jurisdictional floor. And two, in light of the information here that the revenue augmentation, if available at all, is less than $300,000, the plaintiff must show before a non-party deposition is held that somewhere else, the defendant (or perhaps other businesses snared in the plaintiff's augmentation web of independent companies) has the remaining $200,000+ in annual gross revenues. Until plaintiff can show — from appropriate discovery from the defendants and in a clear legal argument — that there is good reason to believe that discovery from a non-party will be material, relevant and likely to be productive, I submit that his request to depose LMRealty is a mere insubstantial wish, and certainly premature.

## IN THE ALTERNATIVE, IF THE DEPOSITION GOES FORWARD, THE WITNESS IS ENTITLED TO A PROTECTIVE ORDER

12. In the event the Court does not quash the subpoena and vacate the notice of deposition, the proposed witness requests a reasonable protective order to assure that the deposition is limited only to issues relating to the plaintiff's twin arguments (a) that the witness's gross revenues are relevant to the action because the law permits, in this case, aggregation of this witness's gross revenues to test for federal jurisdiction; and (b) that the witness's gross revenues at relevant times was sufficient to actually lift the corporate defendant above the jurisdictional floor.

13. If the witness is to be deposed, therefore, LMRealty requests that the questioning be limited to the following issues, and that if any relevant documents or things are requested and exist, but contain information beyond these issues, that the irrelevant portions and information may be redacted prior to production. The limits should include:

(a) Facts showing or tending to show that there are specific connections of listed types and extents between the witness and the corporate defendant which the Court, in the protective order, rules are material and relevant to the plaintiff being able to establish that the gross revenues of the witness may be aggregated with the gross revenues of the corporate defendant to determine Fair Labor Standards Act jurisdiction of this Court over this action.

(b) Facts showing or tending to show the gross revenues of the witness at times ruled relevant in the protective order. I am advised that if there is any measure of the witness's business which might be relevant to the jurisdiction question, the sole statutory measure would be gross revenue. Therefore, the witness should not have to answer or provide documents or things, for example, which relate in any way to any expenses or other uses of funds.

(c) If the Court determines that *some* gross revenues of the witness may be relevant to the jurisdiction inquiry, we urge the Court to hold that the only relevant gross revenues of the witness are revenues received from the corporate defendant. We ask that the protective order limit the questioning and the requests for documents and things accordingly.

14. LMRealty also requests that all its testimony (and the transcript) and all its produced documents and things, be treated as confidential, to be used only for purposes of determining jurisdiction in this action. As such, if documents and things are provided to plaintiff's counsel, we seek protective order provisions as follows:

(a) That plaintiff's counsel may make no secondary copies (except for the law firm's own internal use).

(b) That no copy be given to the plaintiff.

(c) That if originals or copies are shown to the plaintiff, that he be ordered to use the statements and information in them, and the knowledge of the existence of the document or thing, only for the intended purpose, and that he be forbidden from disclosing them to any other person for any reason.

(d) That after the copies or things have been used for their intended purpose, the things shall be returned to the witness via counsel, and the plaintiff's counsel shall represent to the witness's counsel that all copies have been destroyed.

WHEREFORE, prospective witness Lucky Mott Realty LLC respectfully prays for an order quashing the subpoena and vacating the deposition notice served on it by plaintiff; or in the alternative, granting protective limitations on the the deposition as outlined above.

_____
Richard Wong

Sworn to before me this
__16__ day of May, 2008

_____
Notary Public

Aubrey R Allen
Notary Public, State of New York
No. 01AL6138164
Qualified in Bronx County
Commission Expires 12 / 21 / 2009