AGINS, SIEGEL, REINER & BOUKLAS, LLP
*Attorneys for* Subpoenaed Non-Party Witness
  Lucky Mott Realty LLC
BY: CARL D. BERNSTEIN, ESQ.
        CHARLES M. NEWMAN, ESQ.
386 PARK AVENUE SOUTH, SUITE 1200
NEW YORK, NEW YORK 10016
(212) 447-5599

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK                          Filed Electronically

MIN YU XIAO,

                                    Plaintiff,

                    – against –                                    No. 07 Civ 9430 (RWS)

LUCKY CHATHAM REALTY CORP. and
RICHARD T. WONG,

                                    Defendants.


**MEMORANDUM OF LAW BY NON-PARTY
DEPOSITION WITNESS, LUCKY MOTT
REALTY LLC, IN SUPPORT OF MOTION TO
QUASH and/or FOR A PROTECTIVE ORDER**

**INTRODUCTION**

This is a motion by a non-party, Lucky Mott Realty LLC ("LMRealty"), for an order to quash a deposition subpoena and vacate a notice to take the non-party's deposition.  In the alternative, if the Court determines a deposition may proceed, LMRealty seeks a protective order limiting the scope of the deposition and protecting the proprietary and confidential information of the non-party witness.

**FACTUAL BACKGROUND AND CONTEXT**
**OF THE SUBPOENA AND**
**DEPOSITION NOTICE**

The Court is respectfully referred to the May 16, 2008 moving affidavit (the "Wong Affidavit") of Richard Wong, a co-owner and co-manager of LMRealty, for more detailed facts. Copies of the subpoena and deposition notice that are the subject of this motion are annexed to the Wong Affidavit as Exhibit 1.

This action is for back wages, alleging federal Fair Labor Standards Act and New York Labor Law claims.  A copy of the complaint is annexed as Exhibit 2 to the Wong Affidavit.  The corporate and/or individual defendants are alleged to be the plaintiff's former employer.[1]  The

---

[1] For example, paragraph 5 identifies the corporate defendant, Lucky Chatham Realty Corp., but does not allege that it was an employer.  Paragraph 6 identifies the individual defendant, Richard T. Wong, and alleges that Wong was plaintiff's employer.  Paragraph 7 identifies the plaintiff and says he "was employed by Wong, Lucky Chatham and/or its predecessor...."

individual defendant, Richard T. Wong, is a co-owner of the corporate defendant and the son of

the moving affiant, Richard Wong.  Wong Affidavit para. 5.  There is no common ownership and

no common control between the proposed witness and either of the defendants.  Wong Affidavit

paras. 4 and 5.  The only connection between either defendant and the proposed witness is a

business one: LMRealty is the landlord and defendant Lucky Chatham Realty Corp. is the tenant

for the second through top floors of 61 and 63 St. James Place in Manhattan, the alleged place of

plaintiff's employment.  Wong Affidavit para. 4.  A copy of the lease for those premises is

annexed as Exhibit 3 to the Wong Affidavit.

In an effort to resolve the discovery dispute among counsel without need of a motion,

counsel for the subpoenaed witness asked plaintiff's counsel for the legal basis supporting the

subpoena and deposition demand.  We learned that the plaintiff sought the deposition of the non-

party solely on the question of whether the defendant is engaged in interstate commerce, thereby

giving the plaintiff both jurisdiction in this Court and remedies under the Fair Labor Standards

Act.

## SUMMARY OF ARGUMENT

This memorandum will show that the plaintiff has failed to demonstrate any basis on

which to require a non-party to subject itself to the requested deposition.  The memorandum will

then show, in the alternative, that *if* it be determined that a deposition is appropriate, the deposi-

tion should be limited in scope and the witness afforded proper protection for its confidential and proprietary information, documents and things.

## ARGUMENT

## THE PROPOSED WITNESS IS A STRANGER TO ALL ISSUES IN THIS CASE AND SHOULD HAVE NO OBLIGATION TO PARTICIPATE IN IT UNDER SUBPOENA

The basis of jurisdiction alleged in paragraph 3 of the complaint is 29 U.S.C. §216, which deals with "Penalties" under the Fair Labor Standard Act.[2]  In paragraph 9 of the complaint, plaintiff alleges that the defendants are in an "industry affecting interstate commerce" within the meaning of 29 U.S.C. §203(b), which defines "commerce".  The complaint continues, in paragraph 10, that the "defendants, in combination with persons performing related activities for a common business purpose" are "an enterprise" with gross annual revenues of at least $500,000.  This is presumably a reference related to 29 U.S.C. §203(s)(1)(A), which reads:

> (s)    (1) "Enterprise engaged in commerce or in the production of goods for commerce" means an enterprise that--
>
>    (A)    (i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and

---

[2]  Paragraph 3 of the complaint also mentions 28 U.S.C. §1367(a).   That section relates to supplemental jurisdiction to include state law claims when a federal court otherwise has jurisdiction, so we do not address that section here.

(ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)[.]

It is respectfully submitted that plaintiff should not be permitted to try to make out his case for federal jurisdiction at the expense of the non-party witness, for several reasons.

Plaintiff's counsel has been good enough to explain that although the plaintiff does not have reason to believe that the defendants themselves have $500,000 in annual gross revenue, he hopes to be able to show that there is a cohort of commercial entities that are related in some way to the defendants for jurisdictional purposes, and if one adds together the gross revenue of all those other companies, the cohort, in the aggregate, has at least $500,000 in annual sales. Without that aggregation, it appears the plaintiff will not have federal jurisdiction for his claims. To justify the right to depose the non-party witness, the plaintiff has a cascading set of burdens, the failure of any one of which is fatal to his position. The plaintiff meets none of his burdens.

**There Are No Goods in Interstate Commerce Because There Was No "Commerce" and There Were No "Goods"**

Section 203(s)(1)(A)(i) of the Fair Labor Standards Act, quoted above, makes clear that to be within interstate commerce, an enterprise must have employees who "engage in commerce or in the production of goods for commerce." The plaintiff was, by his own account, "a porter, janitor or handyman." Complaint (Wong Affidavit, Exh.2) para. 8. "Commerce" is defined in 29

- 4 -

U.S.C. §203(b) as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."  There is nothing about the work of a porter, janitor or handyman that carries beyond the borders of the State in which his work is performed, and his work is unrelated to the production of any good.

Nothing that could come out of LMRealty's deposition can change the facts about the type of work the plaintiff performed (assuming he performed any).  Respectfully, the plaintiff has failed to meet his first burden.

**The $500,000 Annual Gross Revenue
Threshold Has Not Been Met**

Suppose, on the contrary, the plaintiff had met his first hurdle.  Under subsection (s)(1)(A)(ii), quoted above, the enterprise that was his employer would have to have at least $500,000 in annual gross revenue for the plaintiff to have federal jurisdiction.  It must be true that the plaintiff cannot show that his defendants have that level of revenues, for a simple reason. If he *could* show that level, then he would not need to cast about for unrelated companies to drag into his cohort theory.[3]  The very existence of the subpoena is extremely strong evidence that the plaintiff's employer does not or did not have the requisite revenues to support federal jurisdiction. The plaintiff has failed to meet his second burden.

---

[3]  If he cannot yet show he reaches the threshold with the defendants' revenues alone but believes he could do so later after disclosure *by the defendants*, then he should undertake that discovery before putting non-parties to the burden of a deposition.

**The Plaintiff Should Not be Permitted to
Depose a Non-Party Without Setting
Forth His Legal Basis For Requesting It**

Suppose, on the contrary, the plaintiff had met his second hurdle.  Plaintiff has not, to our

knowledge, provided any legal support for the proposition that the gross revenues of unrelated,

independent, non-party companies may be counted to help a plaintiff reach a jurisdictional

minimum.  The plaintiff has not, to our knowledge, set forth the legal justification, or even the

legally authorized computational bases, on which one may determine whether a company belongs

inside or outside the jurisdictional cohort for purposes of inflating revenues.  It is respectfully

submitted that at least until the plaintiff makes out that legal argument to the satisfaction of this

Court, the subpoenaed witness should be treated as what it is: a stranger to the underlying

transactions and to this case.  It should not be put to the burden of having to prepare for and

attend a deposition, at which it will be asked about its confidential revenue information.  The

plaintiff has failed to meet his third burden.

**Even If the Plaintiff Had Shown A
Theoretical Right to Depose the Non-
Party, Facts Already Before Him
Undercut His Factual Assertions**

Suppose, on the contrary, the plaintiff had met his third hurdle.  For the purpose of

resolving the matter to the plaintiff's satisfaction, counsel informally provided LMRealty's annual

gross revenue figures to plaintiff's counsel to show that *even if the plaintiff's aggregation*

*argument were valid*, a deposition would show that the facts undercut, not support, federal

jurisdiction.  The information is repeated in the record in paragraphs 8 through 11 of the Wong Affidavit.  They show that the only revenue the proposed non-party witness had from the defendants was $42,000 per year in rent, and the only revenues it had from all sources was never recently higher than $293,000 a year.

Recall that the arithmetic exercise the plaintiff wishes to go through is to add LMRealty's revenues to those of the employer-defendant to reach the $500,000 statutory minimum.  Depending on his exact theory, the plaintiff should be able to show that the employer had annual revenues of at least $458,000 or $207,000 (so that adding LMRealty's revenues of $42,000 or $293,000 would bring the plaintiff up to his minimum).  The plaintiff offered us no such information, leaving LMRealty no alternative but to bring this motion.  It should be incumbent on the plaintiff now — in opposing this motion to quash — to prove that he has facts which, when taken together with the revenue information he would re-receive if the deposition were held, would help to make the plaintiff's case *assuming* the plaintiff's legal theory is valid.  The plaintiff has so far failed to meet his fourth burden.

It is respectfully submitted that since failing any one of the plaintiff's burdens should result in the subpoena being quashed, his having failed all of them makes quashing the subpoena an even more compelling case.

**IN THE ALTERNATIVE, IF THE
DEPOSITION IS PERMITTED TO PROCEED,
THERE SHOULD BE A STRONG
PROTECTIVE ORDER ON SCOPE
AND CONFIDENTIALITY**

If, despite the foregoing analysis, the Court determines that the deposition of LMRealty may go forward, LMRealty requests a protective order as to two broad subjects.  One, the sole inquiry required by plaintiff is as to gross revenues.  Normally, of course, the financial information of a company is beyond the bounds of discovery until there is a judgment entered against it (unless the finances are related to the subject matter of the suit.)  Not only is there no judgment against LMRealty, but LMRealty is not even a party, and its finances can therefore have nothing to do with the substance of the suit.  A protective order should be entered specifying the very limited scope that would be permitted at the deposition: testimony, documents and things that are, or which might reasonably lead to, information that is material and relevant to the witness's gross revenues for appropriate periods.

Two, all information and documentation that is provided at the deposition should be treated in the strictest confidence, to be used only for the limited purpose of testing whether plaintiff has federal court jurisdiction and remedies in this case.  On both the scope and confidentiality points, LMRealty has expressed its concerns and requests in the Wong Affidavit, paras. 13 and 14.  If the deposition is permitted to go forward, we respectfully repeat the request for a protective order here.

- 8 -

**CONCLUSION**

For the foregoing reasons, it is respectfully submitted that the subpoena and notice to take the deposition of non-party witness Lucky Mott Realty LLC should be quashed and vacated.  In the alternative, if a deposition is permitted, it should be subject to a protective order as to scope and confidentiality.


Dated:  New York, New York
        May 16, 2008

                                        Respectfully submitted,
                                        Agins, Siegel, Reiner & Bouklas, LLP


                                        By: s/ Charles M. Newman
                                               Charles M. Newman (CN9370)
                                               Carl D. Bernstein (CB8002)
                                        *Attorneys for* Subpoenaed Non-Party
                                               Witness Lucky Mott Realty LLC
                                        386 Park Avenue South, Suite 1200
                                        New York, New York 10016